# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ELEV8 BALTIMORE, INC., *et al.*,

Plaintiffs,

v.

CORPORATION FOR NATIONAL AND
COMMUNITY SERVICE, *operating as*
AMERICORPS, *et al.*,

Defendants.

No. 1:25-cv-01458-MJM

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................4

I.      Statutory Background ..................................................................................................4

II.     Factual Background ....................................................................................................5

III.    Procedural History ....................................................................................................5

LEGAL STANDARD ..........................................................................................................7

ARGUMENT ......................................................................................................................7

I.      Plaintiffs Cannot Establish Likelihood of Success on the Merits.........................7

       A.     To the Extent they are Justiciable, Plaintiffs' Claims Must Be Heard by Another Court or Administrative Body ..................................................7

            1.     Insofar as Plaintiffs Challenge Defendants' Actions Concerning their Grants, the Tucker Act Vests Exclusive Jurisdiction Over Such Claims in the Court of Federal Claims ..............................8

            2.     Administrative Bodies Identified in the Civil Service Reform Act of 1978 are the Exclusive Channels for Any Challenge to the Propriety of Federal Employee Removals. ...............................15

       B.     Plaintiffs' APA Claims Are Unlikely to Succeed. ..................................18

            1.     The APA Does Not Provide a Cause of Action to Challenge Programmatic Agency-Wide Efforts ...........................................18

            2.     Defendants' Activities Are Not Reviewable Because None Are Final Agency Action ................................................................21

       C.     Defendants' Staffing Determinations are Committed to Agency Discretion. ..........................................................................................23

       D.     Plaintiffs Fail to Make a Showing That Defendants' Actions Triggered any Statutory Notice and Comment Requirement ........................................27

       E.     Plaintiffs Cannot Show that the Agency Unlawfully Withheld or Delayed Agency Action ....................................................................................29

       F.     Plaintiffs Cannot Show a Likelihood of Success on their Constitutional Claims. ..................................................................................................31

       1.     Defendants Have Not Violated the "Separation of Powers" ........32

       2.     Defendants have not violated the Appointments Clause..............34

II.    Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the Court Grants the Requested Relief....................................................35

    A.    Individual Plaintiffs (Does 1-3) Fail to Demonstrate Irreparable Harm...36

    B.    Nonprofit Plaintiffs Fail to Demonstrate Irreparable Harm.....................37

    C.    Union Plaintiff Fails to Demonstrate Irreparable Harm..........................39

III.   The Balance of the Equities and the Public Interest Support Rejection of the Plaintiffs' Motion..............................................................................................40

IV.   Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief and this Court Should Stay Relief Pending the Government's Determination of Whether to Appeal..........................................41

CONCLUSION................................................................................................42

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*,
    357 F.3d 62 (D.C. Cir. 2004)............................................................................10, 11

*Am. Bioscience, Inc. v. Thompson*,
    269 F.3d 1077 (D.C. Cir. 2001) .................................................................................20

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019) ..................................................................................16

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
    No. 25-CV-03698-SI, 2025 WL 1358477 (N.D. Cal. May 9, 2025)............................5

*Am. First Legal Found., v. U.S. Dep't of Agric.*,
    Civ. A. No. 22-3029 (BAH), 2023 WL 4581313 (D.D.C. July 18, 2023),
    *aff'd*, 126 F.4th 691 (D.C. Cir. 2025) ......................................................................19

*Am. Foreign Serv. Ass'n v. Trump*,
    No. 1:25-CV-352 (CJN), 2025 WL 573762 (D.D.C. Feb. 21, 2025) ..........................1

*Appalachian Energy Grp. v. EPA*,
    33 F.3d 319 (4th Cir. 1994)........................................................................................22

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    35 F.4th 1328 (Fed. Cir. 2022)...................................................................................35

*Bennett v. Spear*,
    520 U.S. 154 (1997) ...................................................................................................21

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .....................................................................................................9

*Carter v. U.S. Dep't. of Educ.*,
    No. CV 25-0744 (PLF), 2025 WL 1453562 (D.D.C. May 21, 2025)..................21, 26

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ...................................................................................................22

*City of New York v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019)......................................................................................23

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................................................2, 30

*Cobell v. Kempthorne,*
    455 F.3d 301 (D.C. Cir. 2006) ...................................................................19

*Coggeshall Dev. Corp. v. Diamond,*
    884 F.2d 1 (1st Cir. 1989) ........................................................................10

*Columbus Reg'l Hosp. v. United States,*
    990 F.3d 1330 (Fed. Cir. 2021) ...............................................................12

*Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy,*
    247 F.3d 1378 (Fed. Cir. 2001) ..................................................................3

*Cousins v. Sec'y of the U.S. Dep't of Transp.,*
    880 F.2d 603 (1st Cir. 1989) ....................................................................21

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,*
    38 F.4th 1099 ......................................................................................12, 13

*Dalton v. Specter,*
    511 U.S. 462 (1994) ............................................................................31, 32

*Dep't of Educ. v. California,*
    145 S. Ct. 966 (2025) .......................................................................*passim*

*Di Biase v. SPX Corp.,*
    872 F.3d 224 (4th Cir. 2017) ...................................................................38

*Direx Israel, Ltd. v. Breakthrough Med. Corp.,*
    952 F.2d 802 (4th Cir. 1991) ...................................................................35

*Drake v. FAA,*
    291 F.3d 59 (D.C. Cir. 2002) ...................................................................24

*Elgin v. Dep't of the Treasury,*
    567 U.S. 1 (2012) ...............................................................................16, 17

*EPA v. Brown,*
    431 U.S. 99 (1977) ...................................................................................22

*Farris v. Rice,*
    453 F. Supp. 2d 76 (D.D.C. 2006) ..........................................................39

*Faulkner v. Jones,*
    10 F.3d 226 (4th Cir. 1993) .....................................................................37

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021)................................................................................24

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
    432 U.S. 326 (1976)................................................................................24

*Federal Leasing, Inc. v. Underwriters at Lloyd's*,
    650 F.2d 495 (4th Cir. 1981)...................................................................38

*Fleming v. Spencer*,
    718 F. App'x 185 (4th Cir. 2018)...............................................................3

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980)................................................................................22

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..................................................................................9

*Harmon v. Brucker*,
    355 U.S. 579 (1958)................................................................................32

*Heckler v. Chaney*,
    470 U.S. 821 (1985)................................................................................26

*Hispanic National Law Enforcement Association NCR v. Prince George's County*,
    535 F. Supp. 3d 393 (D. Md. 2021).........................................................37

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999)...................................................................41

*Humana of S.C., Inc. v. Califano*,
    590 F.2d 1070 (D.C. Cir. 1978)...............................................................28

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004).................................................................22

*Lampon-Paz v. OPM*,
    732 F. App'x 158 (3d Cir. 2018)..............................................................17

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)..................................................................24, 25, 27

*Littlefield v. U.S. Dep't of the Interior*,
    85 F.4th 635 (1st Cir. 2023)....................................................................24

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990)..................................................................................18, 19, 20

*Maryland v. U.S. Dep't of Agric.,*
  No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025).......................................1, 17

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997)..................................................................................................7

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982)...........................................................................12, 13

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell,*
  915 F.3d 197 (4th Cir. 2019)...............................................................................35, 38

*Murthy v. Missouri,*
  603 U.S. 43 (2024).................................................................................................30

*Nken v. Holder,*
  556 U.S. 418 (2009).............................................................................................7, 41

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004)................................................................................................19

*Opelika Nursing Home, Inc. v. Richardson,*
  356 F. Supp. 1338 (M.D. Ala. 1973)....................................................................27

*Pippenger v. U.S. DOGE Serv.,*
  No. 25-CV-1090 (BAH), 2025 WL 1148345 (D.D.C. Apr. 17, 2025).......................14

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.,*
  313 F. Supp. 3d 62 (D.D.C. 2018)......................................................................26

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs,*
  87 F.3d 1242 (11th Cir. 1996)..............................................................................21

*Racing Enthusiasts & Suppliers Coal. v. EPA,*
  45 F.4th 353 (D.C. Cir. 2022)...............................................................................22

*Roe v. Dep't of Def.,*
  947 F.3d 207 (4th Cir. 2020)................................................................................36

*Rydie v. Biden,*
  No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022)..........................................3

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................................38, 40

*Saul v. United States*,
  928 F.2d 829 (9th Cir. 1991) ..............................................................................17

*Schaghticoke Tribal Nation v. Kempthorne*,
  587 F.3d 132 (2d Cir. 2009) ................................................................................35

*Slattery v. United States*,
  635 F.3d 1298 (Fed. Cir. 2011) ............................................................................9

*Sols. in Hometown Connections v. Noem*,
  No. 8:25-cv-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ..........................14, 15

*Stand Up for Cal.! v. U.S. Dep't of Interior*,
  994 F.3d 616 (D.C. Cir. 2021) ..............................................................................35

*Transohio Sav. Bank v. Dir. Off. of Thrift Supervision*,
  967 F.2d 598 (D.C. Cir. 1992) ..........................................................................9, 10

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
  No. 1:25-CV-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ....................9, 10, 14

*United States v. Fausto*,
  484 U.S. 439 (1988) ..........................................................................................16, 17

*Veit v. Heckler*,
  746 F.2d 508 (9th Cir. 1984) ..............................................................................17

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ..........................................................................................24, 26

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ..................................18, 34

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................................7

**Statutes**

5 U.S.C. § 553 ..........................................................................................................27, 28

5 U.S.C. § 701 ..........................................................................................................25

5 U.S.C. § 702 ..........................................................................................................9

5 U.S.C. § 704 ..................................................................................................22

5 U.S.C. § 706 .........................................................................................5, 6, 21

28 U.S.C. § 1346 .............................................................................................10

28 U.S.C. § 1491 ..........................................................................................9, 10

42 U.S.C. § 5052 .............................................................................................31

42 U.S.C. § 12501 .............................................................................................4

42 U.S.C. § 12561 ...........................................................................................13

42 U.S.C. § 12563 ...........................................................................................13

42 U.S.C. § 12571 ......................................................................................27, 33

42 U.S.C. § 12581 .................................................................................4, 29, 31

42 U.S.C. § 12612 .................................................................................3, 29, 36

42 U.S.C. § 12636 ...........................................................................................31

42 U.S.C. § 12639 ...........................................................................................31

42 U.S.C. § 12651 .............................................................................................4

42 U.S.C. § 12651a ............................................................................................4

42 U.S.C. § 12651b ..............................................................................28, 29, 33

42 U.S.C. § 12651c .............................................................................................4

42 U.S.C. § 12651d ...................................................................................*passim*

42 U.S.C. §§ 12612–12624 ..............................................................................29

Civil Service Reform Act of 1978 ("CSRA"),
   Pub. L. No. 95-454, 92 Stat. 1111 ............................................................16

Further Consolidated Appropriations Act, 2024,
   Pub. L. No. 118-47, § 401, 138 Stat. 460 (Mar. 23, 2024)..........................28

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................41, 42

**Regulations**

2 C.F.R. § 200.340.....................................................................................8, 11, 12

2 C.F.R. §§ 200.339-343 ...........................................................................................31

45 C.F.R. § 2540.400.................................................................................................31

45 C.F.R. § 2551.34...................................................................................................31

45 C.F.R. § 2552.34...................................................................................................31

45 C.F.R. § 2553.31...................................................................................................31

45 C.F.R. § 2556.140.................................................................................................31

Executive Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ....................................5

Executive Order No. 14,222, 90 Fed. Reg. 11095 (Feb. 26, 2025).......................5, 27, 41

## INTRODUCTION

Defendants respectfully submit this opposition to Plaintiffs' Request for a Preliminary Injunction, ECF No. 25-1 ("Pls.' Mot."). Plaintiffs are fourteen non-profit organizations, one labor union, and three individual participants in the Defendant agency's service programs ("Plaintiffs"). They challenge a host of actions that the Defendant agency, the Corporation for National and Community Service ("AmeriCorps"), has taken or may take in the future.

Plaintiffs seek an extraordinary nationwide preliminary injunction enjoining Defendants from taking further action to "dismantle" AmeriCorps, including preventing (or requiring) a host of employment actions; preventing the termination (or reinstatement) of grants or contracts; and overseeing the continued operation of the National Civilian Conservation Corps (NCCC).

Plaintiff's motion to prevent purported "dismantling" ought to be rejected, as other courts have done against similar claims. *Maryland v. U.S. Dep't of Agric.,* No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025). (staying the district court's preliminary injunction); *Am. Foreign Serv. Ass'n v. Trump,* No. 1:25-CV-352 (CJN), 2025 WL 573762 (D.D.C. Feb. 21, 2025). At the outset, Plaintiffs face numerous dispositive jurisdictional obstacles. Plaintiffs' motion challenges not only specific Plaintiff grants that have already been terminated (which can be addressed only by the Cout of Federal Claims) but also staffing and grant termination actions that Plaintiffs speculate *may* injure them in the future. *See, e.g.*, Decl. of Alexandria Adams ("Adams Decl.") (Elev8 Baltimore, Inc.) ¶ 14, ECF No. 25-3 ("[W]e *expect* we will have to reorganize our staffing and programming funds. We *do not yet know* exactly what this will look like . . .") (emphasis added); Decl. of Staci

Berger ("Berger Decl.") (Housing and Comm. Dev. Network of New Jersey) ¶ 12, ECF No. 25-10 (stating that the organization lacks the staff "to answer the Housing Help hotline [and] respond to individuals who have contacted us by phone or e-mail in a timely fashion, which *may* put those individuals at risk for housing insecurity.") (emphasis added); Decl. of Anna Kellar ("Kellar Decl.") (Democracy Maine) ¶ 8, ECF No. 25-12 ("We informed our advisory committee members that we *would likely not* be able to move forward because we have not been able to identify any other funding to support the roles AmeriCorps participants would have served in.") (emphasis added). Article III does not permit challenges to agency actions that might cause only speculative future injury to Plaintiffs— and it does not permit challenges to actions that will not affect Plaintiffs at all. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (no standing if predictions are inherently speculative, relying on a "highly attenuated chain of possibilities.").

Nor can Plaintiffs circumvent the jurisdictional bars that prevent litigation of their claims before this Court. Plaintiffs label all steps that Defendant agency may have taken or may take in the future as "dismantling AmeriCorps." Pls.' Mot. at 10. But in reality, Plaintiffs' grievances target two broad categories of disparate agency activities: administration of grant agreements and personnel decisions. None of these claims may be litigated before this Court. As the Supreme Court recently emphasized, the Tucker Act requires litigation over the disbursement of funds pursuant to grant agreements and challenges to grant terminations to occur in the Court of Federal Claims. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). Following this direction, courts have dissolved a temporary restraining order that had required an agency to reinstate terminated grants and prohibited the agency from terminating other grants; in so doing, the court cited "the

Supreme Court's unmistakable directive" that the proper forum for such a case is the Court of Federal Claims. Elec. Order, *Mass. Fair Hous. Ctr* v. *Dep't of Hous. and Urban Dev.*, No. 3:25-cv-30041-RGS (D. Mass. Apr. 14, 2025), Dkt No. 42, *appeal docketed,* No. 3:25-cv-30041-RGS (D. Mass. Apr. 16, 2025), Dkt No. 48; *Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims.").

Plaintiffs cannot challenge the agency's workforce reductions here (or at all). Rather, Congress has enacted comprehensive statutory schemes governing the review of federal agencies' employment decisions. Those schemes give no rights to those outside the employment relationship, like Plaintiffs here, and therefore preclude review of such claims, which must in any event instead be channeled to and through administrative agencies—as courts in this Circuit have repeatedly held. *See, e.g., Rydie v. Biden*, No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022); *Fleming v. Spencer*, 718 F. App'x 185 (4th Cir. 2018). Nor can Plaintiffs challenge the agency's decision to release NCCC members from service because implementation of the NCCC program is left entirely to agency discretion under 42 U.S.C. § 12612(a).

For these and other reasons discussed herein, Plaintiffs cannot show a likelihood of success on their claims. Indeed, none of the four factors this Court must weigh to determine whether Plaintiff is entitled to preliminary relief favor the entry of an injunction. Plaintiffs have made no showing of cognizable irreparable harm likely to result in the absence of the broad relief they seek, particularly in the exceptional context of a preliminary injunction, and the balance of equities and the public interest cut against the Plaintiffs'

request.

Plaintiffs' motion should be denied. However, if the Court enters a preliminary injunction, it should at most be limited to the Plaintiffs that demonstrate standing and irreparable harm, this Court should require the payment of an appropriate bond pursuant to Rule 65, and it should stay any injunction pending appeal.

## BACKGROUND

### I.    Statutory Background

AmeriCorps is a government corporation led by a Board of Directors (the "Board") and a Chief Executive Officer ("CEO"). 42 U.S.C. §§ 12651; 12651(a); 12651(c). The Board and the CEO are appointed by the President with the advice and consent of the Senate. *Id.* §§ 12651a(a)(1); 12651c(a).

Congress created AmeriCorps to (among other things) "renew the ethic of civic responsibility and the spirit of community and service throughout the varied and diverse communities of the United States," *id.* § 12501(b)(2); "build on the existing organizational service infrastructure of Federal, State, and local programs, agencies, and communities to expand full-time and part-time service opportunities for all citizens," *id.* § 12501(b)(7); "leverage Federal investments to increase State, local, business, and philanthropic resources to address national and local challenges," *id.* § 12501(b)(17); and "support institutions of higher education that engage students in community service activities and provide high-quality service-learning opportunities." *Id.* § 12501(b)(18). As part of its responsibilities, AmeriCorps issues grants to fund a wide variety of programs in furtherance of its mission. *Id.* § 12581.

## II.    Factual Background

On February 11, 2025, President Trump issued Executive Order No. 14,210, titled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025). The Order calls for the elimination of "waste, bloat, and insularity." *Id*. § 1. To achieve these goals, the Order directs agency heads to "promptly undertake preparations to initiate large-scale reductions in force (RIFs). . . ." *Id*. § 3(c).

On February 26, 2025, the President issued Executive Order No. 14,222, titled "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative." Exec. Order No. 14222, 90 Fed. Reg. 11095 (Feb. 26, 2025). The Order calls for a "transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent. . . ." *Id*. § 1. The Order directs every federal agency to "submit a plan to reduce the size of the Federal Government's workforce," and to "promptly undertake preparations to initiate large-scale reductions in force (RIFs)." Exec. Order No. 14,210, § 3(a)-(c), 90 Fed. Reg. at 6970.[1]

In accordance with the Executive Orders, AmeriCorps initiated reorganization efforts.

## III.    Procedural History

On May 5, 2025, Plaintiffs filed a Complaint asserting five counts: (1) Count I— violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), by Defendants' arbitrary and capricious change in agency policy, Compl. ¶¶ 142-45; (2) Count

---

[1] Defendants are currently enjoined from any further implementation of Exec. Order No. 14,210 or from executing existing RIF notices or issuing any further RIF notices. *See* Order, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1358477 (N.D. Cal. May 9, 2025), on reconsideration in part, --- F. Supp. 3d. ---, 2025 WL 1413762 (N.D. Cal. May 15, 2025).

II—violation of the APA, 5 U.S.C. § 706(2)(A), (B), and (C), by agency actions that are "not in accordance with law," "contrary to constitutional right [or] power," and "in excess of statutory jurisdiction, authority, or limitations." *id*. ¶¶ 146-51; (3) Count III—violation of the APA by withholding mandatory agency action, *id*. ¶¶ 152-36; (4) Count IV— violation of the APA by failing to engage in notice and comment rulemaking before making significant changes to agency programs, *id*. ¶¶ 157-65; and (5) Count V— violation of the separation of powers/*ultra vires* executive action through the agency's termination of statutorily mandated programs or funding disbursements, *id*. ¶¶ 166-72. Plaintiffs assert these claims against Defendants AmeriCorps, Jennifer Bastress Tahmasebi, in her official capacity as interim head of AmeriCorps, and Nate Cavanaugh, in his official capacity as the "DOGE Team Lead" for AmeriCorps. Additionally, Plaintiffs assert one count: Count VI—violation of the Appointments Clause through agency action taken at the direction of non-Senate confirmed, non-principal officers, *id*. ¶¶ 1-6 (*sic*), against Jennifer Bastress Tahmasebi, in her official capacity as interim head of AmeriCorps, and Nate Cavanaugh, in his official capacity as the "DOGE Team Lead" for AmeriCorps. Two weeks later, Plaintiffs filed a Request for a Preliminary Injunction. That motion sought declaratory and injunctive relief stating that Defendants' actions are violations of the APA, unconstitutional, or otherwise contrary to law and to enjoin Defendants from taking further action to "dismantle" AmeriCorps. Proposed Order, ECF No. 3-2 ("Proposed Order"), ¶ 1. Plaintiffs also request an order directing Defendants to return AmeriCorps, its grantees, and its program participations to the status quo as of April 15, 2025, to include the reinstatement of all active status employees who have been placed on administrative leave since that date, the rescinding RIF notices issued to employees since that date, and the

pause of any terminations pursuant to those notices, among other prospective relief requests. Proposed Order ¶¶ 2-9, ECF No. 3-2.

In support of their Motion, Plaintiffs submitted twenty declarations. *See* ECF Nos. 25-3 *et seq*. Plaintiffs are fourteen non-profit organizations, one labor union, and three individual participants in the Defendant agency's service programs that allege that agency actions taken at the behest of the agency and/or the individual Defendants have or will cause them irreparable harm.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citation omitted). To warrant preliminary relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors of the analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

I. **Plaintiffs Cannot Establish Likelihood of Success on the Merits.**

A. **To the Extent they are Justiciable, Plaintiffs' Claims Must Be Heard by Another Court or Administrative Body.**

While Plaintiffs characterize their claims as challenges to what they call the "[d]ismantling of this agency," a purported "dismantling" is not itself a final agency action. *See* Pls.' Mot. at 1. Rather, Plaintiffs' claims are aimed either at terminations of

grants or personnel reductions. A so-called "dismantling" in this fashion would simply comprise a collection of individual agency decisions—and to the extent those decisions involve grant terminations or personnel actions, those actions are not reviewable in this court.

### 1. Insofar as Plaintiffs Challenge Defendants' Actions Concerning their Grants, the Tucker Act Vests Exclusive Jurisdiction Over Such Claims in the Court of Federal Claims.

Some of AmeriCorps' activities challenged in this suit involve the termination of grant agreements. First, Plaintiffs challenge the termination of grants awarded to the Nonprofit Plaintiffs as part of their lawsuit as violations of the Constitution and the APA. *See*, *e.g.*, Pls.' Mot. at 4-5 (citing termination of $400 million grants); *see also id.* at 5 (citing grant terminations pursuant to 2 C.F.R. § 200.340(a)(4)); *see also id.* at 5 n. 1 (stating that "[t]hirteen of the Nonprofit Plaintiffs lost grants or subgrants . . ."); *see also id.* at 10 (citing the Defendants' purported final decision to "dismantle AmeriCorps" through "a series of actions that led to the termination of the entire NCCC program and over a thousand grants . . ."). Second, Plaintiffs challenge the effect of the termination of grants on Individual Plaintiffs who "receiv[ed] only a prorated portion of their promised educational grant[.]" *See id.* at 30; *see also* Proposed Order at ¶¶ 2, 7. These claims, however, must be adjudicated by the Court of Federal Claims.

As the Supreme Court recently emphasized, Congress vested the Court of Federal Claims with exclusive jurisdiction over claims seeking "money damages" and because that the APA's waiver of sovereign immunity does not extend to orders "to enforce a contractual obligation to pay money," this Court lacks jurisdiction over such grant terminations, whether challenged independently, or as part of each agency's larger

reevaluation of its policies under a new administration. *California*, 145 S. Ct. at 868 (per curiam) ("the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"). In *California*, the Supreme Court explained:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction is "not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

145 S. Ct. at 968. *See also U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-CV-00465, 2025 WL 763738 at *4 (D.D.C. Mar. 11, 2025) (explaining that the D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government" (quoting *Transohio Sav. Bank v. Dir. Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)).

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides for judicial review of breach claims for express or implied contracts over $10,000 in the Court of Federal Claims (or district court for claims less than $10,000) "unless such jurisdiction was explicitly withheld or withdrawn by statute." *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*). The D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government." *U.S. Conf. of Catholic Bishops*, 2025

9

WL 763738, at *4 (quoting *Transohio Sav. Bank*, 967 F.2d at 609 (emphasis in original)). Put another way, "[t]he only remedy to which the United States has consented in cases of breach of contract is to the *payment of money damages* in either the Court of [Federal] Claims, if the amount claimed is in excess of $10,000, 28 U.S.C. § 1491(a)(1), or the district courts, where the amount in controversy is $10,000 or less. 28 U.S.C. § 1346(a)(1)." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (emphasis in original). And "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 3.

The Supreme Court's conclusion was foreshadowed in *United States Conference of Catholic Bishops v. United States Department of State*, which amplifies upon *California*'s reasoning. 2025 WL 763738. In that case, a grantee that had been receiving funds via cooperative agreements with the State Department sought a temporary restraining order preventing the State Department from terminating cooperative agreements with that grantee. *Id.* at *2–3. The court noted that the grantee had millions of dollars in requested reimbursements pending and that without ongoing funding the grantee claimed "thousands of refugees already in its care would soon lack enough support." *Id.* at *2. Nonetheless, the court declined to grant preliminary relief, holding the Tucker Act stripped it of jurisdiction to entertain such a claim. *See id.* at *4–8. The court explained that "the ultimate inquiry of whether a claim is 'essentially a contract action' turns on two key considerations: '[t]he source of rights upon which the plaintiff bases its claims and the type of relief sought." *Id.* at *5 (quoting *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004)). The court found the latter factor to be dispositive, reasoning that the relief the plaintiff sought in that case "sounds in contract." *Id.* (quoting

10

*Albrecht*, 357 F.3d at 68). There, as here, the grantee sought an order enjoining the government from taking steps to give effect to a letter terminating the plaintiff's grant. *See id*. As the Court explained, however, "[s]tripped of its equitable flair, the requested relief seeks one thing: [plaintiff] wants the Court to order the Government to stop withholding the money due under [its grant agreements]. In even plainer English: [the plaintiff] wants the Government to keep paying up. Thus [the plaintiff] seeks the classic contractual remedy of specific performance." *Id*. at *7 (quotation omitted). The court held that treating the remedies sought in that case as equitable "would be to distort the obvious" since plaintiffs asked the court "to reverse the Government's decision to cease a financial relationship with the [plaintiff]." *Id*.

Here, the Nonprofit Plaintiffs' claims are grounded in the termination of grant agreements with AmeriCorps and the suspension of funding. *See* Pls.' Mot. at 5 (stating that Nonprofit Plaintiffs grants were terminated pursuant to 2 C.F.R. § 200.340(a)(4) permitting termination "pursuant to the *terms and conditions* of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." (emphasis added)). Nonprofit Plaintiffs complain of harms such as the termination of or scaling back of the Nonprofit Plaintiffs' core activities, the need for Nonprofit Plaintiffs to reallocate or find temporary funding, or the inability of Nonprofit Plaintiffs to fulfill contractual agreements with their partners and communities. *See id*. 22-24. Additionally, Individual Plaintiffs complain that their service terms were abruptly terminated and, because of that termination, "the promise of attendant benefits and educational grants upon the completion of their terms" would be unfulfilled. *See id*. at 30. The heart of this action, then, is a request to prevent or reverse the termination of these

financial awards or the enforcement of the government's promises—in other words, to enforce the monetary obligations of the government.  Therein, the claims will turn on whether the grant agreements themselves authorize termination under these circumstances. *See* Exhibit 1 (stating that grant to the Michigan College Access Network (MCAN) was cancelled pursuant to 2 C.F.R. § 200.340(a)(4)); *see also* Exhibit 4 (incorporating suspension or termination of an award pursuant to 2 CFR § 200.340 as a term and condition of the award).

It is of no moment that the Plaintiffs style their grant termination claims as constitutional or APA claims. As the D.C. Circuit has cautioned, Courts should "prohibit[] the creative drafting of complaints . . . to avoid the jurisdictional consequences of the Tucker Act." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022 (cleaned up). "[F]ederal grant agreements [are treated as] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330 (Fed. Cir. 2021); *see also Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (a plaintiff "should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA."). Moreover, the Notices of Award and terms and conditions incorporated by reference clearly reflect an agreement between the grantee and AmeriCorps. *See* Exhibit 4, p. 1 ("By accepting funds under this grant, recipient agrees to comply with General Terms and Conditions … and the Program Terms and Conditions[.]"; "Recipient also agrees to comply with assurances and certifications made in the grant application, supporting

documents, and with applicable federal statutes, regulations and guidelines. Recipient agrees to administer the project in accordance with the approved application and supporting documents."). "Grants such as Plaintiffs are considered contracts under the Tucker Act." *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 420-21 (1995) (holding that where the government uses "a bilateral agreement that satisfies the traditional requirements for a contract, then that arrangement would fall within the scope of this court's Tucker Act jurisdiction.")

"Whether a claim is 'at its essence' contractual" "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 968) (citations omitted). Here, both the source of the rights alleged, and the remedy sought by Plaintiffs confirm that their claims related to grants and contracts are essentially contractual. Plaintiffs' grant agreements are contracts because they set out obligations that must be fulfilled in exchange for consideration from the government. Indeed, Congress has made clear that any funds distributed to grantees like those whose terminations Plaintiffs challenge are paid via grant agreements, i.e., contracts between the agency and the grantees. *See* 42 U.S.C. § 12561(b) ("The Corporation is authorized to make grants to, and enter into contracts . . . ."); *id.* § 12653(a) ("The Corporation may carry out [activities] through grants, contracts, and cooperative agreements with other entities"). This is true regardless of whether Plaintiffs frame those as "assistance" or "grants"—they are governed by and paid via contract. *See Crowley*, 38 F.4th at 1107 (cautioning against "creative drafting of complaints to avoid the jurisdictional consequences of the Tucker Act" (cleaned up)). Plaintiffs attempt to sidestep the Tucker Act's jurisdictional mandate by casting their

13

claims as requests for equitable relief stemming from statutory mandates. *See* Pls.' Mot. at 16-18 ("Rather than seeking money damages, which are unavailable, Plaintiffs ask this Court to vacate the challenged agency actions and restore the parties to their 'last uncontested status' preceding the controversy.").

Notwithstanding Plaintiffs' artful pleading, Plaintiffs cannot dress up their Tucker Act claims in the garb of a constitutional or APA cause of action for equitable relief when the requested relief is all the same: reopening the spigot of grant disbursements. Their purported entitlement to funds does not come directly from statute, none of which specifically requires funding *to Plaintiffs*, and it certainly does not come from the text of the Constitution itself. It comes from grant agreements. *Id.* at 13 (citing an entitlement to grants originating from statutory instruction); *see also* Exhibit 4. These grants are contracts, and suits challenging their termination—and Plaintiffs' demand that the government keep paying funds out from these terminated grants—belong in the Court of Federal Claims.[2] *Am. Ass'n of Coll. for Tchr. Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), ECF No. 30 (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *Department of Education* decision); *see also*

---

[2] Unsurprisingly, then, courts around the country have understood the Supreme Court's order to "deprive this Court of the authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims." *See, e.g.*, *Pippenger v. U.S. DOGE Serv.*, No. 25-CV-1090 (BAH), 2025 WL 1148345, at *5 (D.D.C. Apr. 17, 2025) (concluding court was "deprive[d] . . . of the authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims"); *Sols. in Hometown Connections v. Noem*, No. 8:25-cv-885, 2025 WL 1103253, at *8-11 (D. Md. Apr. 14, 2025) (denying motion for emergency relief challenging the termination of grants in light of the Supreme Court's order in *Department of Education v. California* and concluding that plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); Order, *Am. Ass'n of Colls. For Tchr. Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), Dkt. No. 30 (staying district court's preliminary injunction involving education-related grants in light of the Supreme Court's *Department of Education* decision); Order, *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 25-5066 (D.C. Cir. Mar. 28, 2015), Dkt. No. 2108313 (denying motion for injunction pending appeal in grant termination case).

*Sols. in Hometown Connections v. Noem*, No. 8:25-cv-885, 2025 WL 1103253, at *8-11 (D. Md. Apr. 14, 2025) (denying motion for emergency relief challenging the termination of certain grants in light of the Supreme Court's order and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction").

Because Plaintiffs seek to ensure the government's continued compliance with the terms of their grant or service agreements, their claims sound in contract. Indeed, Plaintiffs' Motion and accompanying affidavits repeatedly emphasize that AmeriCorps disbursed grants to the Nonprofit Plaintiffs with the expectation that they would carry out a service program or project, which may include the awarding of subgrants—and it is the termination of those grants they want to enjoin. In other words, Plaintiffs challenge the Defendants' termination of these agreements and want the government to keep paying. Similarly, the Individual Plaintiffs agreed to a service term of a specific length in exchange for the promise of educational grants and other benefits. The Individual Plaintiffs seek to recover the full benefit of these agreements. As such, jurisdiction for all of Plaintiffs' claims related to those grant agreements lies exclusively in the Court of Federal Claims. Because Plaintiffs cannot establish jurisdiction, they cannot succeed on the merits of claims related to grant agreements, and their request for extraordinary injunctive relief should be rejected on that basis alone.

> **2. Administrative Bodies Identified in the Civil Service Reform Act of 1978 are the Exclusive Channels for Any Challenge to the Propriety of Federal Employee Removals.**

Plaintiffs also challenge AmeriCorps' employment actions, i.e., AmeriCorps' recent Reductions in Force (RIFs). Specifically, the Union Plaintiff ("Local 2027")

states that "88% of [its] bargaining unit [members] ha[ve] been placed on administrative leave." Pls.' Mot. at 27, and the Nonprofit Plaintiffs have been impacted by "cuts to AmeriCorps staff [that] have deprived the Nonprofit Plaintiffs of information that they urgently need to fulfill their missions." Pls.' Mot. at 25. Despite the alleged downstream effects of Defendant agency's decision terminate employees or place employees on administrative leave, Federal law does not permit Plaintiffs to employ an APA action to challenge the removal of federal employees.

Rather, under the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111, Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices of challenged personnel practices. In so doing, Congress balanced "the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the CSRA's grievance procedures over all other remedies.

Specifically, in passing the CSRA, Congress made the Office of Special Counsel, the Merit Systems Protection Board ("MSPB"), and the Federal Labor Relations Authority ("FLRA") the exclusive means for federal employees, applicants, labor unions and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions. *See Fausto*, 484 U.S. at 455, even when those disputes involve constitutional claims, *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012) (citation omitted); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C.

Cir. 2019).

The Supreme Court has long recognized that Congress established the CSRA as a comprehensive scheme covering all matters involving federal employment. *See Fausto*, 484 U.S. at 455. Indeed, the Supreme Court has held that, even if a federal employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" *Elgin*, 567 U.S. at 12. The CSRA thus "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984).

Plaintiffs rely heavily on the Ninth Circuit's and the U.S. District Court for the Northern District of California's holdings in *American Federation of Government Employees, AFL-CIO v. Trump*, but these holdings do not control in this Circuit. Additionally, the Fourth Circuit recently overturned the denial of a stay of injunction in *Maryland v. U.S. Department of Agriculture* finding that the government was "likely to succeed in showing the district court lacked jurisdiction over Plaintiff's claims" that "the Government violated federal law when it terminated thousands of probationary federal employees without following the procedures required for a reduction in force[.]" *Maryland v. U.S. Dep't of Agric.*, No. 25-1248, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025). The persuasive authority of *American Federation of Government Employees, AFL-CIO v. Trump* is also diminished by that court's acknowledgement of, and disagreement with, the

D.C. Circuit's holding in *Widakuswara v. Lake* on the question of channeling. The D.C. Circuit held in *Widakuswara* that the district court in that case likely lacked jurisdiction over an agency's personnel actions where plaintiffs were aggrieved by "'many individual actions' that cannot be packaged together and 'laid before the courts for wholesale correction under the APA." *Widakuswara*, No. 25-5144, 2025 WL 1288817, *3 (D.C. Cir. May 3, 2025) (citing *Lujan*, 497 U.S. 871 (1990)), *en banc petition rejected per curiam*, No. 25-5144 (D.C. Cir. May 28, 2025). Because federal law requires channeling of all claims related to federal employment via the administrative bodies that Congress created in the CSRA, this Court lacks jurisdiction to consider Plaintiffs' claims to the extent they challenge the termination of federal employees or placement of federal employees on leave. This Court should follow the Fourth Circuit and D.C. Circuit in finding that this court lacks jurisdiction over Defendants' discrete personnel actions as well as the Supreme Court's guidance in *California* that the APA does not allow litigants to forestall properly applicable channeling regimes that Congress established. *See California*, 145 S. Ct. at 968.

**B. Plaintiffs' APA Claims Are Unlikely to Succeed.**

Plaintiffs challenge the ongoing implementation of two Executive Orders by Defendants across an entire agency. In this way, their grievance fails to satisfy key statutory prerequisites for the APA. The Court should find that Plaintiffs' APA claims are unlikely to be successful as an impermissible programmatic attack that does not challenge discrete agency action, let alone "final agency action" reviewable under the APA.

**1. The APA Does Not Provide a Cause of Action to Challenge Programmatic Agency-Wide Efforts**

Plaintiffs' APA claims are unlikely to be successful because they are not challenging a discrete agency action, but rather a collection of grant terminations,

personnel actions, and programmatic activities. Under the APA, plaintiffs "must direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan*, 497 U.S. at 891. And that agency action must be "circumscribed" and "discrete[.]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

Consistent with these principles, the APA does not permit Plaintiffs to "seek *wholesale* improvement" of agency management "by court decree"—even in the face of allegations of "rampant" violations of law. *Lujan*, 497 U.S. at 891. "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted). "Consequently, as each case only presents the court with a narrow question to resolve, [the court] can have no occasion to order wholesale reform of an agency program." *Id.*

Plaintiffs characterize the challenged agency action as a "final decision [that] was implemented through a series of actions that led to the termination the entire NCCC program and over a thousand grants, as well as their termination of . . . the vast majority of staff who do the work of the agency." Pl. Mot. at 10.[3] But Plaintiffs agglomeration of programmatic, personnel, and grantmaking decisions clearly constitutes an impermissible programmatic challenge to Defendants' "ongoing executive policymaking." *Am. First Legal Found.*, *v. U.S. Dep't of Agric.*, Civ. A. No. 22-3029 (BAH), 2023 WL 4581313, at *7 (D.D.C. July 18, 2023), *aff'd*, 126 F.4th 691 (D.C. Cir. 2025). Here, Plaintiffs

---

[3] The National Civilian Community Corps (NCCC) has not been terminated and is currently accepting applications and recruiting members and team leaders for Fall 2025. *See* AmeriCorps Search Results (last updated May 19, 2025), https://my.americorps.gov/mp/listing/search.do?criteria.programTypesString=NCCC%3BNLDR&criteria.programState=&criteria.programName=&_gl=1*hxnbir*_gcl_au*OTQyNDUwOTAyLjE3NDgzNTYxNzE. (Exhibit 5).

improperly seek wholesale judicial review of the agency's implementation of the Executive Orders.

Plaintiffs do not challenge specific grant terminations; specific payments they claim to be entitled to; specific changes to service requirements; or specific personnel terminations—they challenge the entire course of conduct of AmeriCorps. *See* Compl., ¶ 2 ("The wholesale dismantling of America's flagship civic service agency cannot be undertaken by unilateral executive overreach that disregards law and lawmakers' intent); Prop. Ord., ¶ 1, ECF No. 25-2 (requesting this court enjoin Defendants from "taking further action to dismantle" AmeriCorps). The APA does not permit such sweeping challenges. In *Lujan*, the Supreme Court dispelled any notion that such a programmatic challenge can proceed under the APA:

> [I]t is at least entirely certain that the flaws in the entire "program"— consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them is ripe for review and adversely affects [a plaintiff].

497 U.S. at 892–93 (footnote omitted). Just as in *Lujan*, Plaintiffs' APA claims seek to bring a collective, programmatic challenge to the possibility that the agencies will fail to disburse grant funds as they become due and the prospect that they may be unable to comply with generalized purported statutory obligations given their current staffing decisions. But these are grab-bag challenges to ongoing agency operations, not discrete challenges to concrete agency actions.

Wholesale challenges like Plaintiffs' are impossible to litigate under the mechanics of judicial review that the APA contemplates. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc.*

*v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "APA review typically takes place on the basis of a record compiled by the agency" consisting of the materials considered "in making the challenged decision." *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989). Wholesale challenges to programmatic decision-making make it impossible for the agency to "compil[e] and organiz[e] the complete administrative record" for the agency action, *see Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), because there is no discrete agency action, as necessary for the parties to proceed to summary judgment. Nor is it possible for the Court to apply the applicable standard of review, *see* 5 U.S.C. § 706, to the agency action. Accordingly, Plaintiffs are unlikely to succeed on their APA claims because they are sweeping programmatic challenges and thus not cognizable under the APA. *See Carter v. U.S. Dep't. of Educ.*, No. CV 25-0744 (PLF), 2025 WL 1453562, at *12 (D.D.C. May 21, 2025) ("In sum, because 'general deficiencies in compliance' with an agency's obligations 'lack the specificity requisite for agency action,' plaintiffs are unlikely to succeed on their APA claims brought pursuant to 5 U.S.C. § 706(2)" (citations omitted)) (rejecting challenge to similar agency dissolution claim).

### 2. Defendants' Activities Are Not Reviewable Because None Are Final Agency Action

AmeriCorps' ongoing compliance with the Executive Orders does not itself constitute final agency action reviewable under the APA. To constitute final agency action: (1) "the action must mark the consummation of the agency's decision-making process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).

Under *Bennett*'s first prong, the agencies' ongoing implementation of the Executive Order marks the initiation, not the consummation, of the agency's decision-making process.[4] *See, e.g., supra* n. 2 (AmeriCorps has restarted recruitment for the NCCC program). The agencies' actions reflect decisions by agency leadership to realign their policy goals and actions consistent with the current administration's directives. Those decisions are "preliminary" in nature and "not directly reviewable[.]" *See* 5 U.S.C. § 704. "[They] may be a step, which if erroneous will mature into a prejudicial result[.]" *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 112 (1948). But that does not make the interim decisions themselves the "consummation of the administrative process" reevaluating the agency's priorities. *Id.* at 113; *see EPA v. Brown*, 431 U.S. 99, 104 (1977) ("For [courts] to review [agency actions] not yet promulgated, the final form of which has only been hinted at, would be wholly novel."); *Appalachian Energy Grp. v. EPA*, 33 F.3d 319, 322 (4th Cir. 1994) (no final agency action where agency "has not taken any action *at this point* triggering [the court's] power to review its position").

Nor does the agency' attempt to implement the Executive Order satisfy the second *Bennett* prong. Prong two's language includes terms of art reflecting "a 'pragmatic' inquiry that requires courts to examine the 'concrete consequences' of an agency action." *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (citation omitted). The court must consider the "concrete impact the [agency action] had on [the Plaintiffs]." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) (considering whether

---

[4] It is worth noting that AmeriCorps is not currently implementing Exec. Order 14210 as it is enjoined from doing so by the Northern District of California. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511 (N.D. Cal. May 22, 2025).

agency action had a "'direct and immediate . . . effect on the day-to-day business' of the complaining parties" (omission in original) (citation omitted)); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) ("This limitation ensures that judicial review does not reach into the internal workings of the government, and is instead properly directed at the effect that agency conduct has on private parties"). Plaintiffs' claims of injury would not stem from the programmatic efforts of the agency writ large, but from specific challenges to specific activities stemming from programmatic plans—from a grant termination (were such terminations reviewable under the APA, which they are not), or the specific cancellation of services to which the Plaintiffs had a legal entitlement.

To be clear: specific grant terminations or specific agency actions might, if the APA otherwise applied, be final agency action. But Plaintiffs do not bring those specific challenges to specific agency actions, they challenge the entirety of AmeriCorps' activities—and Plaintiffs cannot subsume concrete final agency action within the banner of a programmatic challenge more generally.

### C. Defendants' Staffing Determinations are Committed to Agency Discretion.

To the extent that Defendants' actions are reviewable by this Court, Plaintiffs are unlikely to succeed in challenging those actions as arbitrary and capricious because those actions are discretionary and committed entirely to the agency. More specifically, Plaintiffs appear to challenge the way in which the agency may carry out its responsibilities in the future, via its staffing and personnel decisions; alleging that these internal decisions may ultimately have an impact on future agency actions. Pls.' Mot. at 6, 15, 27 (stating, in sum and in substance, that AmeriCorps' internal personnel decisions will harm the agency's ability comply with its statutory duties in the future). This claim fails because such staffing

determinations are not reviewable. "Judicial review under [the arbitrary and capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Rather, the Court must ensure "that the agency has acted within a zone of reasonableness[.]" *Id*. "[T]he standard of review is highly deferential" in determining whether an action is arbitrary and capricious, *Littlefield v. U.S. Dep't of the Interior*, 85 F.4th 635, 643 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 1117 (2024), and agency action regarding reallocation of resources and reorganizing of priorities after a change in presidential administrations, if reviewable at all, must be afforded highly deferential rational basis review, *cf. Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (noting that, absent a statutory directive to the contrary, an agency has unreviewable "capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."). Plaintiffs bear the burden of making such a showing.

Courts lack the power to "dictat[e] to the agency the methods [and] procedures" the agency must use to complete its statutory obligations. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544-45 (1978) (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 432 U.S. 326, 333 (1976)). Indeed, internal staffing decisions are traditionally left to an agency's discretion. *See id*. at 524 (explaining that the Supreme "Court has for more than four decades emphasized that" even outward facing procedures [are] basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments"). To override these principles and enjoin agency leadership from exercising procedural control over their own staff to ensure that agency staff is carrying out statutory obligations or otherwise exercising agency

leadership's policies would be an extraordinary violation of the separation of powers. Such activities are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "In determining whether a matter has been committed solely to agency discretion, [courts] consider both the nature of the administration action at issue and the language and the structure of the statute that supplies the applicable legal standards for reviewing that action." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). Here, each factor shows that Defendants' managerial decisions—both with respect to staffing and with respect to funding—are committed to agency discretion.

Plaintiffs repeatedly complain about Defendants' staffing decisions, which they say hindered the provision of what Plaintiffs claim are the Defendants' legally mandated obligations. But this conflates two distinct inquires: (1) internal agency staffing determinations, on one hand, and (2) specific provision of specific support (in the Nonprofit Plaintiffs' case) or union membership dues payments (in the Union Plaintiff's case) by agency staff to them, on the other. The first is committed to agency discretion, and Plaintiffs cannot use their fears about the future provision of the latter to justify challenges to the former, particularly in the absence of concrete actions to terminate statutorily required obligations. As a result, Plaintiffs are unlikely to succeed on the merits of their arbitrary and capricious claim regarding staffing changes, which involve actions committed to agency discretion by law. First, staffing decisions fit neatly among those "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln*, 508 U.S. at 191–92 (quoting 5 U.S.C. § 701). Individual staffing decisions reflect efforts to determine whether ongoing agency actions "best fits the agency's overall policies" under new leadership and "whether agency resources are best

spent on" current projects or whether they would be better spent differently. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id*. at 831–32. Second, Plaintiffs point to no statute limiting the agency's inherent discretion to make independent staffing decisions. Again, agencies generally have broad discretion to fashion internal procedures for formulating policies and implementing a statute. *See Vt. Yankee*, 435 U.S. at 543. Ultimately, if Plaintiffs are dissatisfied with the conduct of specific functions in a manner that would constitute final agency action, they may challenge that action. And they cannot preemptively challenge staffing determinations antecedent to those actions on the fear that the agency may not later be able to comply with any statutory mandates. But it is the latter challenge Plaintiffs bring, because they cannot bring the former. *See, e.g.*, *Carter*, 2025 WL 1453562 at *8 (rejecting APA claim that staffing downsizing would compromise agency actions because "[w]hile the Department's actions may eventually have the effect of preventing OCR from conducting 'prompt investigations,' the challenged agency actions do not themselves violate the Department's regulatory obligations.").

Plaintiffs also challenge the broad-based termination of grants as arbitrary and capricious. These terminations are reviewable only under the Tucker Act, but even if they are reviewed under the APA, Plaintiffs claims must be rejected. First, the grantmaking decisions made by AmeriCorps are precisely the type of administrative decision that courts should afford substantial discretion. *See Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75 (D.D.C. 2018) ("The Supreme Court agreed, holding that, by its nature, an agency's decision regarding how it will spend funds from a lump-

sum appropriation is an unreviewable exercise of agency discretion, unless Congress has somehow cabined the agency's discretion in the authorizing text of the statute."); *see also Lincoln*, 508 U.S. at 193-194 (1993) (finding the Indian Health Services' decision to discontinue a program was unreviewable under the APA because "[t]he reallocation of agency resources to assist handicapped Indian children nationwide clearly falls within the [Indian Health Services'] statutory mandate to provide health care to Indian people[.] . . . The decision to terminate the Program was committed to the Service's discretion.") It is clear from AmeriCorps' authorizing statutes that it is authorized to make, subject to the availability of appropriations, grants to States, territories, tribes, and other public or private nonprofit organizations, and institutions of higher education to further a broad policy mandate from Congress to carry out or support national community service programs. *See* 42 U.S.C.§ 12571(a). Indeed, Defendants did identify a justification for grant terminations: changes in policy preferences stemming from the Executive Order to align the agency's operations only with those that are statutorily required. *See* Exec. Order 14,222; Exhibit 1 (Termination Notice). As such, Plaintiffs' claims that Defendants' grant terminations were arbitrary and capricious or contrary to law are unlikely to succeed on the merits.

### D. Plaintiffs Fail to Make a Showing That Defendants' Actions Triggered any Statutory Notice and Comment Requirement.

Plaintiffs further aver that AmeriCorps was required to take certain actions only after notice-and-comment rulemaking. It was not.

At the outset, the challenged actions "relat[es] to agency management or personnel or to . . . grants" and are therefore exempt from notice-and-comment rulemaking under the plain terms of the APA. 5 U.S.C. § 553(a)(2); *see also Opelika Nursing Home, Inc. v. Richardson*, 356 F. Supp. 1338, 1342 (M.D. Ala. 1973) ("[T]he requirement of notice in

the Administrative Procedure Act, 5 U.S.C. § 553(b), is inapplicable when regulations concern matters relating to grants, as do the instant ones." (citation omitted)); *see also Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C. Cir. 1978) ("Section 553(a)(2) cuts a wide swath through the safeguards generally imposed on agency action.", and that the statutory exemption still prevails "when 'grants,' 'benefits' or other named subjects are 'clearly and directly' implicated.").

Notwithstanding this general principle, Plaintiffs argue that Defendants violated the statutory requirement that "the board, 'set[] overall policy,' 42 U.S.C. § 12651b(g)" and Section 401 of the 2024 Appropriations Act, which requires notice and comment rulemaking prior to "any significant changes to program requirements, service delivery or policy." Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, § 401, 138 Stat. 460, 695 (Mar. 23, 2024); Pls.' Mot at 15. But even if the APA general exemption from notice and comment is preempted by the more specific language of that Act, the actions at issue are beyond the scope of the Act. Defendants' actions do not constitute a change in program requirements, service delivery, or policy. Plaintiffs do not establish that AmeriCorps changed the "program requirements" Nor do they show that the agency changed "service delivery" or "service policy" requirements. Rather, the agency has taken steps to reduce its activities to statutory minimums in response to a Presidential directive by terminating individual grants, placing specific employees on administrative leave, or ending the service terms of individuals participating in certain programs.

A RIF is not a change to "program requirements" or "service delivery" or "service policy." Nor are contract terminations. There is thus no binding requirement of notice-and-comment rulemaking here—and, in any event, the Court should, absent clear statutory

28

language, decline to extend the APA's notice-and-comment requirements to a context—i.e., "matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts"—that Congress has generally expressly exempted from notice-and-comment procedures. Finally, to the extent that Plaintiffs argue that the challenged actions had to have been issued by the Board, this argument fails: none of these actions fall within the scope of the duties of the Board with respect to overall policy or the duties enumerated in 42 U.S.C. § 12651b(g).[5]

> **E. Plaintiffs Cannot Show that the Agency Unlawfully Withheld or Delayed Agency Action.**

Plaintiffs assert that AmeriCorps has failed to take agency actions that it is required by statute to take. Specifically, Plaintiffs argue that Defendants eliminated the NCCC program that it is required to carry out pursuant to 42 U.S.C. §§ 12612–12624 and terminated State and National grants that they are required to award on the basis of state populations under 42 U.S.C. § 12581(e)(2).

As explained above, Defendants have not eliminated the NCCC program, but rather, the agency has discretionarily taken steps to reduce its activities. *See supra* note 2. The NCCC program's continuation as a factual matter notwithstanding, the statutes cited by Plaintiffs authorize, but do not require, Defendants to maintain the NCCC program. *See* 42 U.S.C. § 12612 ("The Corporation *may* establish the National Civilian Community Corps Program to carry out the purpose of this division." (emphasis added)).

Plaintiffs also allege that Defendants terminated State and National grants that they

---

[5] The CEO is "responsible for the exercise of the powers and the discharge of duties of the Corporation that are not reserved to the Board." *See* 42 U.S.C. § 12651d(a). However, the "authority and control over all personnel of the Corporation," with the exception of certain personnel, and the "suspension or termination of payments and positions" under the national service laws is squarely within the authority of the CEO, or the person to whom the CEO delegates those authorities. *See id.* 12651d(a), (b)(2)(B), (b)(6).

are required to award on the basis of state population. Pls.' Mot. at 17; 42 U.S.C. § 12581(e)(1)-(3) (stating that AmeriCorps shall allot "35.3 percent of the allocated funds for that fiscal year" to states in proportion with their population to other states, and that the minimum grant to each state "shall be at least $600,000, or .5 percent of the amount allocated" under the proportional formula.). Plaintiffs fail to establish that Defendants have violated this statute and, further, it lacks standing as to claims associated with State and National grants.

To meet the constitutional requirement for standing, Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper*, 568 U.S. at 409). Accordingly, Plaintiffs lack standing to seek broad relief against the Defendant agency as to other parties that are not plaintiffs before this Court—they can only assert standing, if at all, to remedy injury to themselves. To the extent Plaintiffs allege injury stemming from the disbursement of State and National grants (as the presumptive recipients of subgrants made therefrom), they lack standing to assert these claims and seek injunctive relief on that basis.

As to whether Defendants have complied with the law, the relevant statute only requires Defendants to allot the formula grants in accordance with the required minimum percentage. This was done in FY 2024 through April of FY 2025. However, there is no requirement under the statute to maintain that required percentage through the life of a grant. By way of example, when AmeriCorps finds a grantee to be noncompliant with the conditions of a grant, the agency may claw back funds spent on noncompliant activities—

regardless of whether the grant funds were competitive or formula funds. *See* 42 U.S.C. § 12636(a)(1); *id.* § 12639(m). Moreover, AmeriCorps may cancel or suspend grant payments. *See id.* § 12651d(b)(6). And the State Commissions may cancel subgrants awarded with formula funds, and a subgrantee that had formula funds may relinquish their subgrants. 2 C.F.R. §§ 200.339-343; 45 C.F.R. § 2540.400. All such permissible activities thus reduce the percentage of formula funds at a given point in time. *See* 42 U.S.C. § 5052(a) (detailing authorization to terminate payments under contracts and grants); *see also* 45 C.F.R. §§ 2551.34, 2552.34, 2553.31; *see also* 45 C.F.R. § 2556.140 (detailing authorization to terminate VISTA projects and assistance). But the only relevant point in time for measuring the percentage of formula funds is at the initial point of allocation. Here, AmeriCorps was fully in compliance with 42 U.S.C. § 12581(e)(1)-(3) because the amount initially allotted to the States was over the required disbursement of 35.3 percent of AmeriCorps State and National Grants and the greater amount of $600,000, or 0.5 percent of the amount allocated under the proportional formula. As such, Defendants are not unlawfully withholding the State and National grants.

## F. Plaintiffs Cannot Show a Likelihood of Success on their Constitutional Claims.

Plaintiffs' constitutional claims allege that AmeriCorps' actions violate Separation of Powers, the Appointments Clause, and are *ultra vires*, *see* Pls.' Mot. at 18-20, are meritless. As a threshold matter, Plaintiffs' asserted constitutional claims are the same claims about spending cuts and personnel decisions, discussed above, dressed up in constitutional language—as the Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994).

31

### 1. Defendants Have Not Violated the "Separation of Powers"

In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. Not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at 472. In reaching this conclusion, the Supreme Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5. Here, Plaintiffs' claims focus entirely on their contentions that the Defendant agencies have not acted consistent with statutory obligations, not whether the Executive has exceeded its authorities under the Constitution. Pls.' Mot. at 4-6. Under *Dalton*, such constitutional claims cannot succeed.

Simply put, a claim that the Executive is exercising authority in a manner that violates a statute is merely a claim that an official has acted in excess of his statutory authority—it is not elevated to a "constitutional" claim merely because it identifies a conflict between a congressional statute and Executive action. *See Harmon v. Brucker,* 355 U.S. 579, 581 (1958) ("In keeping with our duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case, we look first to petitioners' *non-constitutional claim* that respondent *acted in excess of powers granted him by Congress.*" (emphases added)). In other words, the distinction is between when an official claims "statutory authority" for their action—a statutory claim—versus when the official claims to be acting "in the absence of any statutory authority," but pursuant to authority vested by

the Constitution itself—a constitutional claim. *See Dalton*, 511 U.S. at 473 (emphasis omitted).

The Court's as-applied statute inquiry with respect to the AmeriCorps grants asks—to the extent that the statutes are relevant at all—whether the relevant statute permits the agency to terminate Plaintiff States' grants. This question is a quintessential "excess of authority" determination. Thus, Plaintiffs' as-applied termination challenge is not bestowed with constitutional dimensions simply because Plaintiffs attempt (and fail) to assert a facial separation-of-powers claim. Plaintiff's case must rise and fall on the claims it chooses to bring. Here, Plaintiff's as-applied "Spending Clause" claim with respect to any specific termination falls at the threshold under *Dalton*. In sum, for all the reasons discussed above, Plaintiffs cannot show a likelihood of success on their separation of powers claims.

Even if Plaintiffs had an avenue to bring their separation of powers claims, however, such claims would fail because Plaintiffs have not identified any actions taken by Defendants that violate any act of Congress. *See* Compl. Counts Two. They have pointed to no statute that would prohibit AmeriCorps from cancelling grant agreements, reducing staff, or eliminating programs. As discussed, the governing statute establishing AmeriCorps authorizes the agency head to disperse grants in accordance with broadly stated objectives. See 42 U.S.C. § 12571(a), (c); 42 U.S.C § 12651b(g) (Board of Directors authorities and duties); 42 U.S.C. § 12651d(b) (Chief Executive Officer authorities and duties). It does not entitle the Plaintiff grant holders to their grant proceeds. *Id.*; *see Widakuswara*, 2025 WL 1288817, at *4 (observing that the governing statutes in that case did not "give the networks an unqualified right to the appropriated funds"). Plaintiffs

allege that the challenged activities have violated Congressional mandates by "unilaterally ceasing statutorily mandated functions," *see* Compl. ¶ 150—but, as discussed above, the agency continues to operate and Plaintiffs do not identify anything in any relevant statute that requires the agency to maintain particular levels of staff, dispense particular quantities of grant funds over a specified time frame (other than the State and National grants for which Plaintiffs lack standing to challenge, *see supra* pp. 29-30), or maintain any particular grant awards.

### 2. Defendants have not violated the Appointments Clause.

Plaintiffs are similarly unlikely to succeed on their Appointments Clause claim. Plaintiffs challenge the decisions of AmeriCorps as effectuated through the "Interim Agency Head," via Defendant Bastress Tahmasebi, or the "DOGE Team," via Defendant Cavanaugh. Pls.' Mot. 7-8. As an initial note, Plaintiffs do not establish that Defendant Cavanaugh formally took the actions challenged here. And Ms. Bastress Tahmasebi had the authority to take such actions. She was designated as the Interim Head of Agency "who shall perform the functions and duties of the CEO temporarily" by the former CEO, Mr. Michael Smith, on January 18, 2025. *See* Exhibit 2 (Designation of Interim Agency Head). The Federal Vacancies Reform Act does not limit Ms. Bastress Tahmasebi's authorities. The FVRA limits the designation of certain acting officials—but only to the extent that those officials are exercising nondelegable powers. As the Federal Circuit held, the statutory language of the FVRA is "unambiguous: the FVRA applies only to functions and duties that a [Presidentially appointed, Senate confirmed] officer alone is permitted by statute or regulation to perform. It does not apply to delegable functions and duties. Other circuits agree." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir.

2022) (citing *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009) and *Stand Up for Cal.! v. U.S. Dep't of Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021)).

Here, the "functions and duties" of the CEO are spelled out in statute at 42 U.S.C. § 12651d, which includes both "authority and control over all personnel of [AmeriCorps]," 42 U.S.C. § 12651d(a), and the authority to "suspend or terminate payments and positions" created under AmeriCorps' grant-making and national service program authorities. *See* 42 U.S.C. §§ 12651d(b)(6), (b)(2)(B). Critically for FVRA purposes, Congress has explicitly stated that the CEO's responsibilities are delegable. *Id.* § 12651d(d)(2) ("Except as otherwise prohibited by law or provided in the national service laws, the Chief Executive Officer may delegate any function under the national service laws, and authorize such successive redelegations of such function as may be necessary or appropriate.") Therefore, all actions taken by Defendants were validly executed by an acting officer and did not violate the Appointments Clause.

## II.    Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the Court Grants the Requested Relief.

Apart from the lack of any likelihood of success, Plaintiffs also have failed to demonstrate that they will suffer irreparable harm if the Court does not enter the requested preliminary injunction. To show irreparable injury, a plaintiff must make a "clear showing" that it will suffer harm that is "'neither remote nor speculative, but actual and imminent.'" *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In addition, harm is irreparable only when it "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citation omitted). "Mere injuries, however insubstantial, in terms of money, time and energy necessarily expended

in the absence of [an injunction] are not enough." *Roe v. Dep't of Def.*, 947 F.3d 207, 228 (4th Cir. 2020) (citations omitted).

### A. Individual Plaintiffs (Does 1-3) Fail to Demonstrate Irreparable Harm.

The Individual Plaintiffs each allege harms concerning the "loss of housing" they were due to receive during their remainder of their service terms and loss of "high-quality training, work experience, and networking opportunities." Pl. Mot. at 20. The cases Plaintiff cites in support of these allegations are easily distinguished.

First, none of the Individual Plaintiff declarations cited by Plaintiffs allege a loss of housing or a guarantee of housing as a result of Defendants actions. *See* Decl. of J. Doe. 1 ("Doe 1 Decl."), ECF No. 25-18; Decl. of J. Doe. 2 ("Doe 2 Decl."), ECF No. 25-19; Decl. of J. Doe. 3 ("Doe 3 Decl."), ECF No. 25-20. As a factual matter, participants in AmeriCorps' national service programs may be provided housing while attending a residential program on one of AmeriCorps' regional campuses and may be provided housing by sponsor organizations on or near their service project locations. However, guaranteed housing is not a term or condition of participation in either the NCCC or VISTA service program. *See* Exhibit 3 (VISTA Program Grant Agreement Terms and Conditions) (Under 42 U.S.C. 4955(b)(1), the VISTA Program is required to provide members with a living allowance. VISTA program participants receive a "living allowance" to cover "housing, food, and other personal expenses during their term of service.").[6]

Second, Plaintiffs cite the Fourth Circuit's decision in *Faulkner v. Jones* as a case

---

[6] Under 42 U.S.C 12612(c), NCCC may have a residential component, but it is not required to do so. Under 42 U.S.C 12615(d)(1), NCCC participants may be housed at campuses, but it is not a requirement. Under 42 U.S.C 12618(c), AmeriCorps can provide "quarters" if found to be appropriate but is not required to do so. Under 42 U.S.C 12621(b)(2), AmeriCorps may enter agreements to house members but is not required to do so. All of these actions are discretionary and nothing in Subtitle E of the National Community Service Act (NCSA) guarantees housing for NCCC participants.

upholding a preliminary injunction on the basis of harms associated with the loss of unique training and education opportunities. In *Faulkner*, the court held that "[w]hen weighing the potential harms … a court is required to keep sight of the relevant strengths of the parties' positions on the merits." *Faulkner v. Jones*, 10 F.3d 226, 233 (4th Cir. 1993). There, the Plaintiff challenged the 150-year-old policy of a military college of only admitting male students and sought an injunction permitting her to attend day classes. *Id.* Plaintiff's claim in that case was based on a constitutional Equal Protection Clause challenge that the district court found had a strong likelihood of success, a finding which the Fourth Circuit did not dispute. *Id.*; *id.* at n. 6 (Hamilton, J., dissenting). As explained above, the Plaintiffs' have not demonstrated that their claims are likely to succeed. Therefore, in accordance with *Faulkner*, this Court must find a "substantial discrepancy" between the potential harms that Individual Plaintiffs' would avoid by issuance of the injunction and the potential harms the Defendants would avoid by its denial. *See Id.* at 233. Defendants respectfully submit that the balance of harms is not so uneven as to justify an injunction in light of Plaintiffs' unlikelihood of success on the merits. [7]

### B. Nonprofit Plaintiffs Fail to Demonstrate Irreparable Harm.

The Nonprofit Plaintiffs have each alleged irreparable harm from loss of funding and the staff and support that AmeriCorps provides grantees. In general, economic harm does not compromise "irreparable injury." This is especially so when anticipated economic losses are recoverable at the end of litigation, because "[b]y definition, a temporary loss is

---

[7] Plaintiffs also cite *Hispanic National Law Enforcement Association NCR v. Prince George's County* in which the underlying claims were based on Equal Protection Clause challenges alleging race-based discrimination and retaliation. The court found that Plaintiffs were likely to succeed given the substantial evidence of discrimination presented and also held that "the deprivation of such a constitutional right alone would constitute irreparable harm." *See* 535 F. Supp. 3d 393, 427 (D. Md. 2021). Plaintiffs in this case do not stand on similarly meritorious claims or categorically irreparable harms.

not irreparable." *Mountain Valley Pipeline*, 915 F.3d at 218*; see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974). Here, the harms pled are economic, speculative, or affect third parties rather than the Plaintiffs seeking relief.

Nonprofit Plaintiffs' allegations regarding AmeriCorps illustrate why economic harms generally are not cognizable as "irreparable harm" for purposes of preliminary equitable relief; money is generally fungible, and, unless the very existence of an enterprise is threatened, *see Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981), a litigant suffering financial loss may be made whole through money damages. That can happen here via the Court of Federal Claims. Indeed, in *Department of Education v. California*, the Supreme Court considering an analogous suit found it "compelling" that grantees—that had been granted a temporary restraining order enjoining the government from terminating various education-related grants—"[had] the financial wherewithal to keep their programs running." 145 S. Ct. at 969. Against that backdrop, the Supreme Court held it was appropriate to stay the temporary restraining order, reasoning that "if [the grantees] ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum." *Id.* Just so in this case. Moreover, there is no actual risk to the existence of all of Plaintiffs' nonprofit organizations because, as the Nonprofit Plaintiffs readily concede, some have been able to "reallocate funding or find stopgaps" to make up for the loss of grant funding. Pls.' Mot. at 23.

Moreover, even if economic injuries were cognizable as irreparable harm, Plaintiffs' alleged injuries are not irreparable as many of the claims amount to bare speculation, conjecture, or are more distant than imminent. *See* Decl. of Rob Barron

("Barron Decl.") (Seed Coalition) ¶ 9, ECF No. 25-15 ("We do not know if we will be able to find funding elsewhere."); *see also* Decl. of Jacob Toups ("Toups Decl.") ¶ 10, ECF No. 25-14 (stating that the AmeriCorps grant award represents thirteen percent of the organization's budget; staff may have to take on additional responsibilities and the "program will simply not be as robust or have as wide a reach as we hoped" in light of the termination); *see also* Kellar Decl. (Democracy Maine) ¶¶ 8-9 (mentioning that program expansion may be delayed; stating that the AmeriCorps award comprises ten percent of the organization's budget and the organization does not yet know whether it will "close that gap."); *see also* Decl. of Ryan Fewins-Bliss ("Fewins-Bliss Decl.") (MCAN) ¶ 17, , ECF No. 25-8 (describing how the organization has been able to shift funds and priorities to manage the grant termination). As explained above, each Nonprofit plaintiff should bring its claims related to the termination of grant funding to the Court of Federal Claims, to litigate whether payment on that grant must be made. There is no authority under which Nonprofit Plaintiffs with insufficiently plead harms can be grouped together with Nonprofit plaintiffs who have suffered more substantial harms in an order that all future payments to all Nonprofit Plaintiffs must be made by AmeriCorps, regardless of the President's or agency's judgment. Yet that is the expansive relief that the Nonprofit Plaintiffs now demand.

### C.  Union Plaintiff Fails to Demonstrate Irreparable Harm.

The individual AmeriCorps employees that make up the Local 2027 Union claim that their placement on paid administrative leave constitutes an irreparable injury. But typically, employment decisions, like a loss of employment, are only irreparable in "genuinely extraordinary situation[s]." *Sampson*, 415 U.S. at 92 & n. 68.  Loss of income

or reputation are not such extraordinary situations. *See id.* at 89–92; *see also id.* at 92 n.68 (declining "to define in advance of their occurrence" what might constitute extraordinary circumstances but ruling out "insufficiency of savings or difficulties in immediately obtaining other employment . . . however severely they may affect a particular individual"). And this case does not present such a situation, where the employees are placed on *paid* administrative leave. *See, e.g.*, *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("[C]ases are legion holding that loss of employment does not constitute irreparable injury"). Although Plaintiffs' claim that the "dismantling of AmeriCorps" constitutes an extraordinary circumstance, Pls.' Mot. at 27, such a situation is not before the Court. And the placement on administrative leave itself cannot not present irreparable injury, especially where any incidental harms Plaintiffs' members' face from this action can be redressed through the CSRA or FSA. *See Sampson*, 415 U.S. at 92 & n.68; *supra* at pp. 16-18. Union Plaintiffs have not satisfied the requirement to make a "clear showing" here. They argue that "[t]he dismantling of AmeriCorps destroys their ability to carry out the mission to which they have devoted their careers and . . . there is no comparable way to promote that cause besides working for AmeriCorps[]", Pls' Mot. at 27, but cite to no authority establishing that as irreparable harm. Moreover, that harm is not fairly characterized as irreparable, nor do Plaintiffs establish that there are no other ways that Plaintiffs can serve the mission of public service or further their careers in this line of work.

## III. The Balance of the Equities and the Public Interest Support Rejection of the Plaintiffs' Motion.

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). In this setting,

granting the preliminary injunction that Plaintiffs seek would disrupt the agencies' efforts to comply with Executive Orders 14,222 and 14,210, and act as responsible stewards of public funds.

Additionally, where the government is legally entitled to make decisions about the disbursement or allocation of federal funds but is nonetheless ordered to release the funding, such funds may not be retrievable afterwards. *See California*, 145 S. Ct. at 969 (noting "the Government's representation that it is unlikely to recover the grant funds once they are disbursed" as among the reasons supporting a stay of a temporary restraining order enjoining the Government from terminating various education-related grants).

## IV. Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief and this Court Should Stay Relief Pending the Government's Determination of Whether to Appeal.

Finally, to the extent the Court issues any injunctive relief, Defendants respectfully request the requirement of a reasonable bond, Fed. R. Civ. P. 65(c), considering the financial damages and other costs that injunction will cost Defendants. As the Fourth Circuit has directed, "[i]n fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). The Fourth Circuit continued: "The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." *Id*. As Plaintiffs are, in part, seeking the disbursement of grant funds, the Court should order the posting of a bond equal to the size of any payment that the Court orders on a preliminary basis here. Without such a protective measure, there may be no way to recover the funds

lost to United States taxpayers if the Court were later to find that Defendants were "wrongfully enjoined." *See* Fed. R. Civ. P. 65(c); *cf. California*, 145 S. Ct. at 968-69 ("respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed. No grantee promised to return withdrawn funds should its grant termination be reinstated, and the District Court declined to impose bond") (citation omitted).

Should the Court enter relief, Defendants request that the Court stay any order pending appeal or, at a minimum, enter a seven-day administrative stay to allow the Solicitor General to determine whether to authorize an appeal and seek emergency appellate relief.

## <u>CONCLUSION</u>

For these reasons, this Court should deny Plaintiffs' Motion for a Preliminary Injunction.

Dated:  May 30, 2025                          Respectfully submitted,

                                              YAAKOV M. ROTH
                                              Acting Assistant Attorney General

                                              ERIC J. HAMILTON
                                              Deputy Assistant Attorney General
                                              Civil Division, Federal Programs Branch

                                              JOSEPH E. BORSON
                                              Assistant Branch Director Federal
                                              Programs Branch

                                              */s/ Ryan Underwood*
                                              RYAN M. UNDERWOOD
                                              (D.C. Bar No. 1656505)
                                              *Trial Attorney*
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, N.W.
                                              Washington, DC 20005
                                              Tel. (202) 305-1952
                                              Email: ryan.m.underwood2@usdoj.gov

                                              *Attorneys for Defendants*

43